Filed 5/14/14  Keefer v. Bounce Event Marketing CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DONALD KEEFER, | B249586 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC457131) |
| v. | |
| BOUNCE EVENT MARKETING, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Deirdre Hill, Judge.  Reversed and remanded with directions.

The Himelson Law Firm and David I. Himelson for Plaintiff and Appellant.

Arent Fox, Richard D. Buckely and Paul A. Rigali for Defendants and Respondents.

_____

Plaintiff and appellant Donald Keefer sued defendant and respondent Bounce Event Marketing, Inc. on claims the company wrongfully terminated an oral agreement hiring Keefer as an independent contractor.[1] The trial court granted Bounce's motion for summary judgment on the grounds that that the agreement alleged in Keefer's complaint was "terminable at will." Further, in the event the agreement required good cause for termination, Keefer failed to present evidence to refute Bounce's showing that it had such cause. Keefer appealed.

We reverse the trial court's order granting Bounce's motion for summary judgment. We remand the cause with directions to the trial court to enter a new and different order denying Bounce's motion for summary judgment and denying the company's alternative motion for summary adjudication of Keefer's causes of action for breach of express contract and breach of the covenant of good faith and fair dealing (as a contract claim). We direct the trial court to grant Bounce's alternative motion for summary adjudication of issues as to Keefer's causes of action for breach of implied-in-fact contract, promissory estoppel, and fraud.

## FACTS

### Background

During 2006 and 2007, Keefer was employed by Liquid Productions as a project manager for the "Lifestyle Experience," a touring promotional exhibition of the Santa Fe Natural Tobacco Company (Santa Fe Tobacco) of New Mexico. Liquid Productions went out of business before the Lifestyle Experience tour ended.

In mid-2009, Keefer learned that Santa Fe Tobacco was planning to issue a request for proposal for a vendor to produce a more ambitious version of the Lifestyle Experience for the year 2010. Santa Fe Tobacco issued its request for proposal in October 2009 and began distributing it to any vendor who requested a copy. It is undisputed that Santa Fe Tobacco sent a copy of its request for proposal to Keefer at the time it was issued. Santa Fe Tobacco's request for proposal stated that the company was seeking a vendor for a

---

[1]     Our references to Bounce include defendant and respondent Tim Swift, Bounce's chief executive officer. We use Swift's name hereafter only as needed for clarity.

2

project which would include two phases: a "build-out" for design and creation of an exhibition, and a "tour" phase for managing the travel, set-up and take down of the exhibition for a cross-country tour of outdoor music festivals where smokers would be invited to come in and sample products.[2]

Keefer decided that he would need to work with a designer to respond to Santa Fe Tobacco's request for proposal. After some research, Keefer chose Bounce. In October of 2009, Keefer introduced himself by telephone to Peter Venturi, Bounce's Manager of Corporate Strategy and Marketing. Keefer explained the opportunity presented by Santa Fe Tobacco's request for proposal, and what he had in mind for a response to the request for proposal.

### The Alleged Independent Contractor Agreement

During a telephone conference on October 20, 2009 between Keefer, Venturi, and Bounce's chief executive officer, Tim Swift, Keefer and Bounce allegedly entered an oral agreement to secure the Santa Fe Tobacco contract. As alleged by Keefer in his ensuing lawsuit, the oral agreement included the following terms: [1] Keefer would introduce Bounce to Santa Fe Tobacco; [2] Bounce would submit a proposal in its name to Santa Fe Tobacco; [3] Keefer would serve as Bounce's internal project manager for development of a proposal to win a contract from Santa Fe Tobacco without charging his customary rate of $65 per hour, but Bounce would pay him an initial fee of $1,000, and would reimburse him for travel expenses; [4] If Santa Fe Tobacco awarded a contract to Bounce, it would pay Keefer a "finder's fee" or "bonus" of $5,000; and [5] would engage him as an independent contractor to act as project manager for the "build" and "tour" phases of the Santa Fe Tobacco project.[3]

---

[2]    According to Keefer's declaration in his opposition to Bounce's motion for summary judgment, it was his experience that contracts for such two-phase marketing projects were normally awarded under two contracts (the build and the tour), but the contracts are also normally awarded together.

[3]    The specific contract terms set forth in this opinion are from Keefer's declaration in support of his opposition to Bounce's motion for summary judgment. His complaint is

3

Immediately following the telephone conference, Keefer began working with Bounce to prepare a proposal to submit to Santa Fe Tobacco before the deadline. By his own version of events, Keefer did most or all of the *non-design work* at this time, including arranging sub-contractors, creating a preliminary proposal budget for Bounce's approval and creating project schedules in calendar form for both the build and tour phases of the project. He prepared several versions of the proposal.

Bounce submitted its proposal to Santa Fe Tobacco in the form of a Power Point presentation. In a section of the proposal identifying the members of Bounce's project team, Keefer was identified as the project manager. Bounce's accompanying budget for its proposal included line items for project manager fees for both the "build" and "tour" phases. Keefer prepared the third and final version of the proposal budget, and Swift approved it. The budgets allocated $45,000 in annual project manager fees for the build, and another $59,550 for the tour.

Santa Fe Tobacco asked Bounce to travel to New Mexico for a live presentation. On November 30, 2009, Keefer, Swift, Venturi, and Bounce's designer travelled to New Mexico where they gave a presentation to Santa Fe Tobacco. Following the presentation, Keefer continued working with Bounce on the Santa Fe Tobacco project through the first week of January 2010. Between late October 2009 and early January 2010, Keefer put in at least 342 hours of work helping Bounce secure the Santa Fe Tobacco contract.

---

both more and less specific as to the terms of the alleged agreement. Keefer's complaint alleged that the parties agreed he would work on the Santa Fe Tobacco project team as its project manager, and, in return, "would receive various forms of short-term and mid-term and long-term compensation and long-term opportunities as alleged . . . ." (Paragraph 41) Elsewhere in his complaint, Keefer alleged that the "explicit terms" of the agreement were that Bounce would pay him "mid-term compensation in the form of annual fees of (at least) $45,000 for serving as project manager for the 'build' phase and $59,500 as project manager for the 'tour' . . . ." (Paragraph 85.) Still elsewhere in his complaint, he alleged that he "expected" he would earn commissions for securing future clients for Bounce, and that his "expectation" was "incorporated into the [parties'] agreement." (Paragraphs 91 and 92.)

4

On January 7, 2010, in the midst of arranging a telephone conference call for the following day to finalize Santa Fe Tobacco's decision whether to award Bounce a contract for the build phase of the project, Swift sent an e-mail message to Venturi, and also, apparently inadvertently, to Keefer. Swift's email asked Venturi why Keefer would be participating in the conference call. When Keefer called Swift to find out what was going on, Swift expressly told Keefer that he had never been Bounce's internal project manager for the bidding process. He said Keefer was to be a third-party project manager only for the tour phase of the Santa Fe Tobacco project, not for the build phase. Swift told Keefer that Bounce had not yet been awarded the tour contract, so Keefer therefore would not be involved any further in the Santa Fe Tobacco project.

On January 28, 2010, Bounce and Santa Fe Tobacco entered a written contract for the build phase of Santa Fe Tobacco's exhibition. The "build contract" called for Bounce to provide engineering drawings for construction to Santa Fe Tobacco within a prescribed frame. Bounce's final, "post-Keefer" proposal budget, a copy of which was attached to the January 2010 build contract, allocated $18,000 for project manager fees.[4]

On April 26, 2010, Bounce and Santa Fe Tobacco entered into a second written contract, this one for the tour phase of the exhibition. Bounce and Santa Fe Tobacco later entered into another written contract for further tour services in 2011.

### The Litigation

Keefer filed a complaint against Bounce alleging causes of action for breach of express contract, breach of implied-in-fact contract, breach of the covenant of good faith and fair dealing, promissory estoppel, fraud, restitution, conversion and violation of the Unfair Competition Law (Bus. & Prof. Code, § 17,200 et seq.; UCL). The trial court sustained Bounce's demurrer as to Keefer's causes of action for restitution, conversion,

---

[4]     As noted above, the last budget in which Keefer was expressly identified allocated $45,000 in annual project management fees for the build  and $59,550 for the tour. In short, the project manager fees upon which Santa Fe Tobacco and Bounce agreed for the build contract were less without Keefer than with him.

and for violation of the UCL, without leave to amend. The court overruled Bounce's demurrer to Keefer's four contract-related causes of action and his fraud cause of action.

Bounce filed a motion for summary judgment, or, alternatively, a motion for summary adjudication of issues of each of Keefer's five causes of action. For purposes of its motion, Bounce assumed that the terms of the parties' agreement were as alleged in Keefer's complaint.[5] The court issued a minute order granting Bounce's motion for summary judgment and entered summary judgment in favor of Bounce and against Keefer.

Keefer filed a timely notice of appeal.[6]

## DISCUSSION

## I. The Standard of Review

In reviewing a motion for summary judgment or motion for summary adjudication of issues, a court must first identify the issues that are framed by the pleadings. (*Turner v. Anheuser–Busch, Inc.* (1994) 7 Cal.4th 1238, 1252.) Summary judgment or summary adjudication of a cause of action is proper when the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

A defendant moving for summary judgment or summary adjudication of issues meets this burden by presenting evidence showing that one or more elements of a cause of action cannot be established or that there is a defense to the action. (Code of Civ. Proc., § 437c, subd. (p)(2); and see also *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853-854 (*Aguilar*).) When the defendant makes this initial showing, the burden shifts to the plaintiff to show the existence of a triable issue of material fact as to

---

[5] The position taken by Bounce for purposes of its motion for summary judgment, accepting the terms of the parties' agreement as alleged in Keefer's operative complaint, is not, according to Bounce, binding for purposes of further proceedings in the litigation.

[6] Prior to filing his notice of appeal, Keefer filed a motion for new trial, which the trial court denied. Keefer's opening brief on appeal does not include any argument as to the new trial order (at best he notes the standard of review of an order denying a motion for new trial), and we do not address the order after this point in our opinion.

the cause of action or defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 850.) A plaintiff cannot merely rely upon the allegations or denials in his or her pleadings, but must "set forth the specific facts," based on admissible evidence, showing that a triable issue of fact exists. (Code Civ. Proc., § 437c, subd. (p)(2); and see, e.g., *Borders Online v. State Bd. of Equalization* (2005) 129 Cal.App.4th 1179, 1188.)

An appellate court independently reviews an order granting summary judgment. (*Aguilar, supra*, 25 Cal.4th at p. 860.) "In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.) In undertaking de novo review of a decision to grant a defendant's motion for summary judgment, a reviewing court must, as did the trial court, examine the evidence in a light favorable to plaintiff, meaning the court must liberally construe his or her evidentiary submissions and strictly scrutinize the defendant's showing, and resolve any evidentiary doubts or ambiguities in favor of the plaintiff. (*Aguilar, supra*, 25 Cal.4th at p. 843.)

## II.      The Causes of Action Framing Bounce's Motion for Summary Judgment

Keefer contends the trial court erred in granting Bounce's motion for summary judgment because he has valid causes of action for restitution, conversion and violation of the UCL. We disagree.

As noted above, these causes of action were dismissed by means of a demurrer, well before Bounce filed its motion for summary judgment. Keefer presents no meaningful argument that the trial court erred in sustaining Bounce's demurrer. Keefer's only argument on appeal addressing the trial court's demurrer ruling on these causes of action amounts in whole to this statement: "See complaint." This argument is insufficient to prevail on appeal.

An order or judgment of the lower court is presumed to be correct, and it is an appellant's burden to establish error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) This is not merely a rule of appellate procedure, but a matter of the constitutional doctrine of reversible error. (*Ibid.*) Accordingly, an appellant must present meaningful argument supported by citations to legal authority and citations to the record to establish

7

a claim of error. (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457.) When an appellant fails to meet this burden, we may deem the point to be without merit. (See, e.g., *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 716 [unsupported claim of error deemed waived].) Given that the pleadings frame the issues for review of a motion for summary judgment (see *Turner v. Anheuser–Busch, Inc.*, *supra*, 7 Cal.4th at p. 1252), Keefer's causes of action for restitution, conversion and violation of the UCL cannot form the basis for a challenge to the trial court's order granting Bounce's motion for summary judgment.

With Bounce's motion for summary judgment framed by Keefer's first through fifth causes of action only, we turn our attention to the trial court's order granting Bounce's motion.

### III.   Breach of Express Contract

Keefer contends the trial court erred in granting Bounce's motion for summary judgment because the record discloses disputed issues of fact for breach of express contract. Specifically, Keefer argues the court erred in concluding there was no triable issue of fact that Bounce wrongfully terminated the parties' independent contractor agreement after benefiting from it, but before Keefer "got anything substantial in return." We agree, but not entirely.

### *Joint Venture*

Keefer's first argument on appeal to avoid the trial court's terminable at will conclusion is that he alleged a "joint venture agreement" in his complaint, and that such agreements are not terminable at will. The trial court rejected this argument and so do we.

A joint venture relationship is an undertaking by two or more parties to carry out a business enterprise for profit. (*Nelson v. Abraham* (1947) 29 Cal.2d 745, 749.) In other words: to bring a contract within the legal designation of a joint venture, it must appear from the parties' contract that they have associated together for their joint benefit in an enterprise in which they are joint owners of property belonging to their association, and share jointly in the profits as well as in the losses that might result from the enterprise.

8

(*Enos v. Picacho Gold Min. Co*. (1943) 56 Cal.App.2d 765, 771.)  In short, the essential elements of a joint venture are "a community of interest in the object of the undertaking, and sharing of profits and losses."  (*Nizuk v. Gorges* (1960) 180 Cal.App.2d 699, 708.)

Under no reasonable interpretation of the agreement alleged in Keefer's operative complaint can the relationship between Bounce and Keefer be found to be that of joint venturers.  The agreement that Keefer alleged in his operative complaint did not include any provisions that he would share in Bounce's profits or losses from its dealings with Sante Fe Tobacco.  The agreement that Keefer alleged did not include any provisions giving Keefer any type of ownership interest in any contract between Bounce and Santa Fe Tobacco.  On the contrary, the agreement that Keefer alleged provided that, if Bounce won a contract with Santa Fe Tobacco, then Bounce would pay Keefer certain specified compensation as an independent contractor.  This type of conditional, back-end compensation arrangement did not make the alleged agreement by which Bounce hired Keefer as an independent contractor into a joint venture agreement. (*Nizuk v. Gorges, supra,* 180 Cal.App.2d at p. 708 [the essential elements of a joint venture agreement are the parties' interest in the object of the undertaking, and sharing of profits and losses].)

Keefer's argument that the parties' agreement was not terminable at will because it was as a joint venture agreement is incorrect as a matter of law.

### *The Implied Contract Term of Reasonable Duration*

Keefer's next argument to avoid Bounce's terminable at will defense is that their independent contractor agreement should be interpreted to include an implied term that its duration is for "a reasonable time."  Keefer acknowledges that he and Bounce never discussed the duration of their agreement, but argues that this undisputed fact is insignificant.  Keefer claims his agreement with Bounce should be interpreted to include an implied term of duration "to employ Keefer as project manager . . . [for] 'at least a reasonable time,'"  which would mean here "for as long as Bounce continued to have a Santa Fe Tobacco contract."  We partially agree.

9

When a court is presented with a contract that is silent as to a term governing its duration, a court must examine the nature of a contract, including the circumstances of its formation, to determine whether the parties intended that their contract would be "impliedly conditioned as to duration *upon the occurrence or non-occurrence of some event or situation.*" (*Consolidated Theatres, Inc. v. Theatrical Stage Employees Union* (1968) 69 Cal.2d 713, 725, italics added (*Consolidated Theatres*).) Where such an event or situation cannot be ascertained to fix the duration of a contract, the law will imply "that the term of duration [of a contract] shall be at least a reasonable time, and that the obligations under the contract shall be terminable at will by any party upon reasonable notice after such reasonable time has elapsed." (*Id.* at pp. 727-728.)

The agreement alleged by Keefer in his operative complaint included an express term of duration in one sense – that the agreement would end if Santa Fe Tobacco decided not to award a contract to Bounce. As alleged by Keefer, and accepted by Bounce for purposes of its motion for summary judgment, the parties' agreement provided that, if Santa Fe Tobacco awarded a contract to Bounce, then Bounce would pay Keefer some measure of compensation. The necessarily corollary was that, if Santa Fe Tobacco did not award a contract to Bounce, then the agreement between Bounce and Keefer ended by its own terms at that point.

We turn to the agreement Keefer alleged in his operative complaint to determine if it was terminable at will. Both Bounce and Keefer rely on *Consolidated Theatres, supra*, 69 Cal.2d 713 for their respective arguments in the interpretation of their agreement But both parties read *Consolidated Theatres* only half-correctly. The rule to be taken from *Consolidated Theatres* is that when a contract is silent as to its duration, the law will imply "[1] that the term of duration [of the contract] *shall be at least a reasonable time*, and [2] that the obligations under the contract *shall be terminable at will by any party upon reasonable notice after such reasonable time has elapsed.*" (*Id.* at pp. 727-728, italics added.) In other words, under *Consolidated Theatres*, the default position in the

10

context of a contract that is silent as to its term of duration is an implied term of duration of a "reasonable time," after which it is "terminable at will." (*Ibid.*)[7]

Implying a reasonable time term of duration into the agreement alleged by Keefer in his operative complaint does not necessarily mean that Bounce breached the agreement by terminating it in January 2010, before Santa Fe Tobacco made its decision whether or not to award a contract to Bounce. Instead, it leaves open the issue whether such a reasonable time elapsed before Santa Fe Tobacco acted, following which the agreement became terminable at will upon reasonable notice. (*Consolidated Theatres, supra*, 69 Cal.2d at pp. 727-728.) Implying a reasonable time term of duration into the parties' agreement also does not necessarily mean, as Keefer asserts, that the agreement's duration must be said to be "for as long Bounce had a contract with Santa Fe Tobacco." In the end, the answer to all of these questions depends on a determination of what measure of time is a reasonable time for the duration of the parties' agreement.

The determination of measure of time is a reasonable time for the duration of the agreement alleged by Keefer is question of fact which should not have been summarily resolved in Bounce's favor unless the evidence allowed for only one conclusion as to the reasonable duration of the agreement. As explained in *Consolidated World Investments Inc. v. Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373 in addressing the issue of what constitutes a reasonable time for the performance of a contract: "Where no time limit is specified for the performance of an act, a reasonable time is allowed. [Citations.] . . . [¶] What constitutes a 'reasonable time' for performance is a question of fact. [Citation.] What is reasonable depends, of course, on the circumstances of each case. [Citation.]" (*Id.* at p. 381.) A similar logic applies to the issue of what constitutes a reasonable time for the duration of a contract. Because the facts in Keefer's current case do not allow for only one conclusion, it cannot determined as a matter of law that the reasonable time for the agreement between Keefer and Bounce is one which is terminable at will from the outset. Although a trier of fact may ultimately find that Bounce terminated the parties'

---

[7] Keefer's current case does not present an employer-employee situation that would be governed by Labor Code section 2922.

11

agreement after a reasonable time from its creation had elapsed, this is not the type of issue fit for resolution by a motion for summary judgment.

*Good Cause for Termination*

Keefer openly acknowledges that the parties' independent contractor agreement was terminable for good cause. But he argues the trial court should not have granted Bounce's motion for summary judgment because there are triable issues of fact as to whether Bounce actually had good cause to terminate the agreement. Keefer argues that Bounce's asserted good cause reasons for terminating the agreement were not genuine. We address this issue because, if the undisputed evidence establishes that Bounce properly terminated the agreement for good cause, then the trial court's order granting the company's motion for summary judgment should be affirmed.

Bounce's motion for summary judgment proffered four "good cause" reasons for its decision to end its relationship with Keefer. The four stated reasons were as follows:

(1)     In the "opinion" of Bounce's chief executive officer Tim Swift, Keefer "had not been honest about his relationship with Santa Fe Tobacco;"

(2)     Swift "believed" that Keefer's performance at the November 2009 presentation to Santa Fe Tobacco "was an embarrassment to Bounce;"

(3)     Santa Fe Tobacco did not want to work with Keefer, and was "not going to award Bounce any portion of the project if [Keefer] was involved," then Bounce no longer needed Keefer's services; and

(4)     Keefer's services "had been substandard and lacking in the expertise that he represented to [Bounce] that he had."[8]

---

[8]     Bounce also submitted a declaration from Jennifer Fisch, a creative director at Santa Fe Tobacco who had been responsible for the project that was eventually awarded to Bounce. Fisch's declaration is very interesting in relation to Swift's declaration. Fisch declared that Bounce's proposal for the project "particularly caught [her] eye," and that she and others at Santa Fe Tobacco "absolutely loved Bounce's design concept." Also, Santa Fe Tobacco's representatives had "great rapport" with Bounce's representatives at Bounce's live presentation in November 2009, but "were left with the feeling that Mr. Keefer would not be a fit for the team." According to Fisch, Santa Fe Tobacco's staff saw Keefer "as being a 'used car salesman type' of person." Shortly after

12

Given the context of its motion for summary judgment, we easily dispatch with Bounce's asserted good cause reasons for termination numbers 1, 2 and 4 because there is disputed evidence in the record on the issue of whether Keefer misrepresented anything to Bounce and or whether his performance was substandard. First, Keefer's opposition to the motion for summary judgment was supported by a declaration in which he denied Bounce's asserted performance-based good cause reasons for terminating the parties' independent contractor agreement. This alone is enough to defeat Bounce's motion for summary judgment. (*Aguilar, supra*, 25 Cal.4th at p. 843 [in addressing a motion for summary judgment, a court must view the evidence in a light favorable to plaintiff, liberally construing his or her evidence and strictly scrutinizing the defendant's showing, and resolving any evidentiary doubts or ambiguities in favor of the plaintiff].) Second, there is more evidence than Keefer's denials. Some of Bounce's own evidence seems to undercut its asserted good cause reasons concerning Keefer's performance. For example, Jennifer Fisch, who was a Santa Fe Tobacco representative involved in evaluating the vendor's bids for the project, submitted a declaration which showed that Santa Fe Tobacco "loved" the design concepts in Bounce's proposal. Further, we see no evidence in the record showing that Bounce at any time prior to January 2010 expressed any dissatisfaction with Keefer. This was enough to defeat Bounce's motion for summary judgment on the issue of Keefer's performance. At trial, a reasonable jury could find that Bounce truly terminated Keefer for substandard performance demonstrating good cause. But a jury could also find that the assertion of substandard performance was pretextual. As a result, the grant of summary judgment was improper.

---

Bounce's live presentation, Fisch decided to contact Bounce to gauge its interest in only building its design, not with undertaking the tour, which would be handled by another vendor. When Swift asked Fisch why Santa Fe Tobacco planned on dividing the project in such a manner, she "candidly" replied that Santa Fe Tobacco "loved [Bounce's] design but . . . , among other things, [it] did not want to work with Mr. Keefer." According to Fisch: "Had Bounce insisted on using Mr. Keefer as the project manager for the project, *there was no possible way that* [*Santa Fe Tobacco*] *would have awarded* the tour portion *of the project to Bounce*." (Emphases added.)

13

This brings us to Bounce's asserted good cause reason for termination number 3: if Santa Fe Tobacco did not want to work with Keefer, and was "not going to award *any portion* of the project" to Bounce if Keefer was involved, then Bounce immediately had good cause at that point to terminate its independent contractor agreement with Keefer.[9] For purposes of addressing this good cause issue, we assume without deciding that the management of a business enterprise such as Bounce must be afforded business judgment latitude in dealing with its third-party clients and its independent contractors. From this starting point, we also find without deciding that a company such as Bounce may have a good cause right to terminate an independent contractor agreement when a third-party client has indicated that it will not do business with the company if a particular independent contractor is in the picture.[10]

However, the finding that Bounce may have had a "good cause" right to terminate Keefer to preserve its relationship with a third-party client, is not itself the end for examination of Bounce's motion for summary judgment. The issue remains whether or not Bounce, in fact, terminated Keefer's contract based on such good cause. We agree with Keefer that the evidence in the record is sufficiently murky to require reversal of the trial court's order granting the motion for summary judgment. The timing of Bounce's

---

[9] Bounce's asserted good cause reason number 3 is somewhat vague. We construe Bounce to have been saying that, if Santa Fe Tobacco was not going to award Bounce "*a part*" of the overall project, specifically, the "tour" phase, then Bounce had good cause to terminate Keefer immediately upon learning of Santa Fe Tobacco's sentiments. In other words, Bounce seems to have been saying that, regardless of whether Santa Fe Tobacco would have worked with Bounce and Keefer on the "build" phase of the project, Bounce still would have had good cause to terminate Keefer's independent contractor agreement. The record discloses disputed facts whether Santa Fe Tobacco was going to award Bounce the build phase of the project in any event. Indeed, the evidence suggests that Santa Fe Tobacco was going to do just that. The declaration from Jennifer Fisch of Santa Fe Tobacco suggests that the tobacco company was already inclined to award the build phase to Bounce, and only expressed reluctance as to working with Bounce, with Keefer, on the tour phase of the project.

[10] We are not dealing in this case with employees who may or may have protections not afforded an independent contractor.

14

decision to terminate Keefer's independent contractor agreement, particularly when coupled with the absence of any pre-termination expression of dissatisfaction to Keefer concerning his work, is sufficient in the context of a motion for summary judgment to support an inference that Bounce's asserted good cause reason for termination was a subterfuge to avoid paying Keefer the money he was due.

Keefer argues that the "inescapable inference" is that Bounce kept Keefer around long enough for him to do the work that Bounce needed to win a contract from Santa Fe Tobacco, then "froze him out." We need not declare that any particular inference in favor of Keefer is inescapable. It is enough to say that that a reasonably jury could make such an inference.

*Insufficient Notice of Termination*

Because we find there are triable issues of fact concerning the duration of the independent contractor agreement between Bounce and Keefer, and whether Bounce in fact terminated the agreement for good cause, we need not address Keefer's argument that there are disputed facts on the issue whether Bounce gave him insufficient notice of its decision to terminate the agreement before it actually did so. We merely note that under *Consolidated Theatres, supra*, 69 Cal.2d 713, the law will imply "[1] that the term of duration [of a contract] shall be at least a reasonable time, and [2] that the obligations under the contract shall be terminable at will by any party *upon reasonable notice after such reasonable time has elapsed.*" (*Id.* at pp. 727-728, italics added.) As we have noted, determining what is reasonable is for the trier of fact.

**IV.  Breach of Implied-In-Fact Contract**

Keefer contends the trial court erred in granting summary judgment on this issue because he presented enough evidence to create triable issues of fact as to whether he and Bounce had an enforceable agreement — implied by either conduct or custom or a

15

combination of both — that Bounce would pay him 5-15 percent of its gross revenues from its dealings with Santa Fe Tobacco and other clients. We disagree.[11]

Keefer's breach of implied contract arguments are not persuasive. The only case cited by Keefer — *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654 (*Foley*) — does not support his argument that he has a valid claim for breach of an implied contract term to be paid 5-15 percent of Bounce's gross revenues from its dealings with Santa Fe Tobacco and other clients. In *Foley*, the Supreme Court addressed whether a plaintiff sufficiently alleged an implied-in-fact contract term overcoming the presumption under Labor Code section 2922 that employment is "at-will." The issue in *Foley* was whether a plaintiff alleged sufficient facts to show that the parties' employment contract included a term, implied-in-fact, that the plaintiff could be and would be terminated only for "good cause." In *Foley* the plaintiff alleged that he had been employed for six years and nine months, and that "repeated oral assurances of job security and consistent promotions, salary increases and bonuses . . . contribut[ed] to his reasonable expectation that he would not be discharged except for good cause." (*Id*. at p. 681.)

In Keefer's case, he does not and cannot allege a course of conduct over a period of time which shows the existence of implied-in-fact contract. Keefer's allegation that he and Bounce entered an implied-in-fact contract calling for Bounce to pay him up to 15 percent of its gross revenues from any Bounce contract with Santa Fe Tobacco or other client is based wholly on his theory that such contracts are a "custom in the marketing trade industry." Keefer offers no authority in support of his position that such custom in an industry may be invoked, in the absence of foundational facts, to create an implied in fact contract out of whole cloth.

---

[11] Keefer's arguments here appear to be distinct from his breach of express contract arguments addressed above. In his breach of express contract claim, Keefer alleges that Bounce promised to pay him specific compensation for his work on the Santa Fe Tobacco project in the event Bounce won a contract.

Although Bounce's motion for summary judgment must be reversed for the reasons explained above, the trial court properly resolved Keefer's second cause of action for breach of implied-in-fact contract in favor of Bounce. On remand, the trial court should enter an order granting Bounce's alternative motion for summary adjudication of issues as to Keefer's second cause of action for breach of implied in fact contract.

## V. Breach of the Covenant of Good Faith and Fair Dealing

Keefer claims summary judgment in favor of Bounce must be reversed because the record discloses the existence of disputed issues of material fact on his third cause of action for breach of the covenant of good faith and fair dealing. We agree.

Every contract includes an implied covenant of good faith and fair dealing between the parties in the performance of the contract; this implied covenant embraces the principal that neither party shall do anything to frustrate another party's right to receive the benefit of the contract. (Cf. *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 371 [commercial lease].) For the reasons explained above in addressing Keefer's first cause of action for breach of express contract, we find that, in the event a jury reasonably concludes that Bounce's asserted good cause to terminate Keefer was a pretext for avoiding its contractual obligations to Keefer, the jury could also reasonably decide that Bounce breached the covenant of good faith and fair dealing. Because the record discloses disputed issues of fact whether Bounce asserted good cause as a pretext for terminating Keefer's independent contractor agreement, his contract-based claim for breach of the covenant of good faith and fair dealing should not have been summarily resolved in favor of Bounce. On remand, the trial court should enter an order denying Bounce's motion for summary adjudication of issues on Keefer's third cause of action for breach of the covenant of good faith and fair dealing.

## VI. Promissory Estoppel

Keefer contends summary judgment in favor of Bounce must be reversed because he has a valid claim against Bounce on his fourth cause of action for promissory estoppel. We summarily reject Keefer's quarter-page argument challenging the trial court's

17

decision to summarily adjudicate this fourth cause of action in favor of Bounce. Keefer's argument does not include any citation to legal authority, and does not refer to any facts in the record. Accordingly, he simply has not met his burden on appeal of demonstrating trial court error. (*Multani v. Witkin & Neal, supra,* 215 Cal.App.4th at p. 1457; *Browne v. County of Tehama, supra,* 213 Cal.App.4th at p. 716 [unsupported claim of error may be deemed waived].)

## VII.   Fraud

Keefer's cause of action for fraud was premised on the theory that Bounce made a promise without the intent to perform. Keefer maintains there is evidence to create a triable issue of fact regarding Bounce's intent not to perform the parties' agreement. Specifically, Keefer argues there is evidence showing that Bounce did not intend to perform because the evidence shows Bounce "did not fully perform," and "swindled Keefer out of 99% of the consideration he was supposed to get from the parties' agreement." We are not persuaded by Keefer's argument.

A false promise may give rise to a fraud claim on the theory that the defendant misrepresented his or her state of mind as to the intent to perform. In so doing, a defendant makes an actionable misrepresentation of fact. (See, e.g., *Douglas v. Superior Court* (1989) 215 Cal.App.3d 155, 158 [false promise to pay commissions].) Because a person's intent is rarely susceptible to direct proof, it may be proved by circumstantial evidence. (*Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 30.) But something more than nonperformance is required to prove a defendant made a promise while harboring the intent not to perform. (*Ibid.*) Something more is required because without such a rule, every breach of contract case could be transformed into a fraud case.

Keefer's arguments on appeal fail to cite us to any circumstantial evidence which would support a fact-finder's conclusion that Bounce harbored the intent not to perform its promises at the time it made them. The only true evidence cited by Keefer is the fact of Bounce's eventual nonperformance of its promises. Further, the undisputed evidence in the record shows that that Bounce did perform initially; it paid Keefer certain upfront fees and travel expenses. This circumstantially refutes Keefer's claim that Bounce never

18

had an intent to perform. Further, Bounce presented evidence showing that it terminated its independent contractor agreement with Keefer only after Santa Fe Tobacco advised Bounce that it would not be awarded a contract if it used Keefer on the project.

It is true that this evidence could be rejected in the context of Bounce's motion for summary judgment had Keefer presented any evidence supporting an inference that Bounce's story was a ruse or involved collusion with Santa Fe Tobacco. However, Keefer has failed to cite us to any evidence beyond the evidence of Bounce's eventual nonperformance. Keefer's theory that Bounce "cut him loose" when it realized it could expend less money on its contract with Santa Fe Tobacco (by paying someone less than it had promised to pay Keefer) undermines rather than supports Keefer's fraudulent promise claim. Evidence that Bounce breached its agreement with Keefer after determining that it could realize a cost-savings does not tend to show that Bounce harbored intent not to perform contemporaneously with making its promises to Keefer.

Keefer has not persuaded us that the trial court's decision to summarily resolve his fifth cause of action for fraud is tainted with error. On remand, the court should enter an order granting Bounce's alternative motion for summary adjudication of issues on Keefer's fifth cause of action for fraud.

## VIII. Failure to Grant Leave to Amend

Keefer contends the trial court abused its discretion in granting Bounce's motion for summary judgment "without permitting [him] to amend his complaint to add a cause of action for breach of fiduciary duty." We find no error because Keefer never moved for leave to amend his complaint.[12] A plaintiff wishing to rely upon an unpleaded theory to defeat a motion for summary judgment "must move to amend the complaint before the hearing." (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 90.) It is not fair to allow a plaintiff to present a "moving target" at the last minute to defeat a motion for summary

---

[12] In his opposition to Bounce's motion for summary judgment, Keefer informed the court that he "intend[ed] to move the court for leave to amend his complaint to add a claim for breach of fiduciary duty." He never actually did so.

judgment.  (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 176.)

## DISPOSITION

The summary judgment order granting Bounce's motion for summary judgment is reversed.  The cause is remanded to the trial court to enter a new and different order denying Bounce's motion for summary judgment, and denying its alternative motion for summary adjudication of issues as to Keefer's causes of action for breach of express contract and breach of the covenant of good faith and fair dealing.  The trial court is directed to enter an order granting Bounce's alternative motion for summary adjudication of issues as to Keefer's causes of action for breach of implied-in-fact contract, promissory estoppel and for fraud.  Each party to bear its own costs on appeal.


                                                      BIGELOW, P. J.

We concur:



        RUBIN, J.



        FLIER, J.


20