Filed 11/26/25  Marriage of Benson CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Marriage of EDWARD HUNTER BENSON and SHELBY SUTCLIFFE BENSON. | D084128 |
| EDWARD HUNTER BENSON, Appellant, v. SHELBY SUTCLIFFE BENSON, Respondent. | (Super. Ct. No. 23FL001293N) |

APPEAL from orders of the Superior Court of San Diego County, Victor M. Torres and Renee Stackhouse, Judges.  Affirmed in part and dismissed in part.

Edward Hunter Benson, in pro per.

Sarah B. Pinkerton, Clemens Warren for Respondent.

Shelby Sutcliffe Benson and Edward Hunter Benson (Hunter) were married in 2007 and share two minor children.[1] After the couple separated in January 2023, Shelby initiated the underlying divorce proceeding, which remains pending in the family court. After Shelby filed the petition for dissolution of marriage, Hunter made three unsuccessful requests for temporary restraining orders (TROs) against Shelby. Hunter also failed to comply with his discovery obligations in the proceeding and violated the automatic temporary restraining orders (ATROs) by withdrawing funds from several of the parties' investment accounts. At Shelby's request, the family court issued an order preventing further distributions from the accounts. After Hunter exhibited disturbing behavior at the minors' school, and at the request of minors' counsel, the court imposed a TRO preventing contact between Hunter and the minors and issued an order requiring Hunter to undergo a psychological examination.

After these proceedings, Hunter stopped participating in the case for several months. During this time, the family court granted a temporary domestic violence restraining order (DVRO) against Hunter and imposed discovery sanctions against him. After Hunter was served with the temporary order and notice of hearing to make the DVRO permanent, he resumed participation in the proceedings and filed a competing request for a DVRO against Shelby. Hunter also requested the court permit him access to the investment accounts it had previously frozen and sought disqualification of minors' counsel.

Thereafter, the trial court issued a five-year DVRO protecting Shelby from Hunter, denied Hunter's request for a DVRO, ordered a distribution

---

[1] We refer to the parties by their first names to avoid confusion and intend no disrespect.

from the parties' investment accounts of $25,000 each and ordered Hunter to pay an outstanding balance of $4,010 to minors' counsel, and, finally, denied Hunter's request to disqualify minors' counsel. On appeal, Hunter challenges all of these orders and a prior court order imposing sanctions of $5,000 under Family Code section 271.[2] We lack jurisdiction to consider Hunter's challenge to the sanction ruling because it is not an appealable order. Accordingly, we dismiss the appeal as it relates to that order. As we shall explain in this opinion, we also reject Hunter's challenges to the DVRO and distribution rulings. Therefore, those orders are affirmed.

FACTUAL AND PROCEDURAL BACKGROUND[3]

Shelby and Hunter were married on August 4, 2007, and separated on January 19, 2023. They have two minor children, born in 2012 and 2017. Shelby filed for divorce on February 3, 2023. Thereafter, Hunter filed a series of three requests for restraining orders under the Domestic Violence

---

[2]     Subsequent undesignated statutory references are to the Family Code.

[3]     Hunter filed a motion to augment the record on appeal at the time he filed his opening brief, and we deferred ruling on the motion to this panel. The motion asks this court to augment the record to include "Part of filed Lodgment re Unfreezing of Frozen Assets Essential for Survival and Legal Representation;" a screenshot of an investment account "Dashboard;" an e-mail "regarding financial matters;" and a bank statement. Augmentation of the appellate record is governed by California Rules of Court, rule 8.155(a)(1)(A). The rule provides, "At any time, on motion of a party or on its own motion, the reviewing court may order the record augmented to include: [¶] ... Any document filed or lodged in the case in superior court." However, "[a]ugmentation does not function to supplement the record with materials not before the trial court." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) Hunter has not presented any evidence establishing the documents were "filed or lodged in the case in superior court." (Cal. Rules of Ct., rule 8.155(a)(1)(A).) Because Hunter has failed to comply with this requirement for augmentation, his motion is denied.

Prevention Act (§ 6200 et seq. (DVPA)) against Shelby in quick succession, one at the inception of the case and two more in March 2023. The first and third requests were dismissed by the court, and the second was voluntarily dismissed by Hunter.

In response to the TRO requests, Shelby sought prevailing party attorney fees under section 6344. At a hearing on June 15, 2023, the court found Hunter's three restraining order requests were frivolous and granted Shelby's request for attorney fees under section 6344. The court ordered Hunter to pay Shelby $30,000 in attorney fees and sanctioned Hunter $5,000 under section 271.[4]

After Hunter failed to exchange required preliminary disclosures under sections 2103 and 2104, or respond to additional discovery requested by Shelby, she sought sanctions under Code of Civil Procedure section 2023.010 for abuse of the discovery process.[5] On July 31, 2023, the court sanctioned Hunter $3,000 under Code of Civil Procedure section 2023.010. The court also directed Hunter to produce responses to outstanding discovery no later than August 31, 2023, and deemed admitted requests for admissions that Shelby had served on Hunter without response.

---

[4]    On June 22, 2023, Hunter and his prior counsel completed a substitution of attorney form indicating Hunter would proceed without counsel.

[5]    Section 2103 states, in pertinent part, "[i]n order to provide full and accurate disclosure of all assets and liabilities in which one or both parties may have an interest, each party to a proceeding for dissolution of the marriage or legal separation of the parties shall serve on the other party a preliminary declaration of disclosure under Section 2104." Section 2104, in turn, sets the deadline for the disclosures and identifies the specific categories of information that must be disclosed.

On August 17, 2023, Shelby filed an ex parte request to freeze joint investment accounts from which Shelby alleged Hunter had withdrawn community property funds. She asserted that without her knowledge, Hunter had withdrawn $94,401.50 from the parties' Vanguard investment accounts, including from their children's college savings accounts in violation of the ATROs. Shelby also requested that notice to Hunter be waived because she feared if he were notified, he would continue withdrawing money from the accounts. At an ex parte hearing the next day, the family court found "good cause for lack of notice" and granted Shelby's request to freeze several accounts.

On September 7, 2023, Hunter was ordered to pay an additional $3,000 in further discovery sanctions after failing to comply with the court's prior order requiring him to comply with his discovery obligations. The court's order noted Hunter had not provided *any* discovery responses.

On September 28, 2023, the minors' attorney filed an ex parte application requesting no contact between Hunter and the minors and a psychological evaluation of Hunter. The request was prompted by an incident at the children's school on September 25, 2023. That day, Hunter arrived at school to pick up the children in an agitated state and the school refused to permit him to drive the children home because school officials did not think he could "safely transport the children." The court granted minor's counsel's ex parte request on September 29, 2023.

After the incident at the minors' school, Hunter disappeared for several months. He did not appear at the ex parte hearing on September 29, 2023, or a subsequent hearing on November 6, 2023, to address the restraining order. Mail sent to his last known address in San Diego was returned as undeliverable with no forwarding address, and a welfare check by law

5

enforcement initiated at Shelby's request indicated Hunter's apartment was vacant.

On November 16, 2023, Shelby filed a request for order (RFO) seeking an order waiving Hunter's preliminary disclosures for failing to complete them, imposing evidentiary sanctions on the issues which would have been covered by the disclosures, and imposing monetary sanctions under sections 271 and 2107, subdivision (c). Shelby served the RFO electronically to Hunter's e-mail.

A hearing on the RFO took place on January 29, 2024. Hunter did not file any opposition and did not attend the hearing. At the hearing, the court found Hunter had failed to comply with the disclosure requirements of section 2104 and granted Shelby's request for a waiver of Hunter's preliminary disclosures. The court also imposed sanctions of $5,000 under section 271 on Hunter and granted Shelby's request to impose evidentiary sanctions under section 2107, subdivision (b)(2). The rulings were memorialized in findings and order after hearing (FOAH) prepared by Shelby's counsel and filed on February 8, 2024.

On February 16, 2024, Shelby filed a request for a DVRO against Hunter. In her declaration supporting the request, Shelby outlined troubling behavior exhibited by Hunter since their separation in January 2023. Shelby explained that Hunter appeared to be experiencing paranoid delusions fixated on thoughts that Shelby and her parents were targeting Hunter and wanted to destroy him, and that they had "hacked" into his e-mail and financial accounts, as well as his Tesla.

Shelby asserted that in January and February 2024, Hunter had sent harassing e-mails and made public Facebook posts accusing Shelby and her parents of abusing the minor children and engaging in other criminal

6

activity.  Hunter had also left harassing voicemail messages for mutual friends and acquaintances threatening to expose Shelby and her parents to "national news."  She stated Hunter had also contacted her employer and accused Shelby of committing crimes and asserting she should be fired, which had resulted in a partial temporary suspension of her employment.  With her declaration in support of the request, Shelby submitted Hunter's e-mails and Facebook messages, and transcriptions of a voicemail from Hunter to a mutual friend.

The court issued a TRO that date and set the matter for a hearing on March 13, 2024.  On February 21, 2024, Hunter served a notice of change of address listing a new address of record in Little Rock, Arkansas.  Thereafter, he filed a response to Shelby's request for a DVRO and later a supplemental declaration.

The day before Shelby's restraining order request was set for hearing, March 12, 2024, Hunter filed his own request for a DVRO against Shelby.  The court denied the TRO the same day and set a hearing on Hunter's request for April 3, 2024.  The next day, the day set for hearing on Shelby's DVRO request, Hunter requested a continuance for the purpose of obtaining counsel.  The court granted Hunter's request and continued the hearing to March 27, 2024.

On March 18, 2024, Hunter filed two ex parte applications, one seeking to disqualify minors' counsel and the second requesting access to some of the investment accounts the court had previously frozen.  At the hearing the following day, the court denied Hunter's ex parte request to disqualify minors' counsel because Hunter had not shown there was a need for emergency relief.  With respect to the second application, the family court granted a one-time disbursement in the amount of $25,000 to each party and

7

ordered Hunter to pay minors' counsel a balance owed of $4,010.10 from his disbursement.

On March 27, 2024, the court continued the hearing on Shelby's restraining order to the date set for the hearing on Hunter's DVRO request, April 3, 2024. Before the hearing, Shelby filed a response to Hunter's request. At the hearing, Shelby's counsel asserted that Hunter had engaged in harassing conduct over an extended period of time, including sending e-mails to her superiors at work and to mutual friends accusing Shelby of slandering Hunter, engaging in undescribed criminal activity, and abusing their minor children. In response to this argument, and in support of his own request for a restraining order, Hunter asserted that he had only attempted to clear his own name in light of Shelby's slanderous comments to others about him. He also asserted that Shelby had taken money from his individual business accounts, and that this allegation had been verified by Bank of America.

At the conclusion of the hearing, the court granted Shelby's request for a DVRO against Hunter for a period of five years and denied Hunter's request. The court found Shelby was credible and the evidence she submitted in support of her request for a restraining order supported the issuance of the order. The court found Hunter was not credible, and that his own evidentiary lodgments supported Shelby's position that he had engaged in a pattern of conduct that disturbed Shelby's peace and that was harassing, and that threatened her ability to support the minor children. The court noted it was concerned with Hunter's mental health and urged him to undergo the psychological examination previously ordered. The court also rejected Hunter's claim that his free speech rights were violated, explaining that harassing conduct was not protected by the First Amendment. At the

conclusion of its ruling, the court directed Shelby's attorney to prepare the FOAH.

The FOAH, which the court entered on April 10, 2024, precludes Hunter "from sending emails and texts to [Shelby's] work ..., to their friend group, or to the church about" Shelby, "or about this case or about [the parties'] children." The order also prevents Hunter "from posting on social media about [Shelby], the case, or the parties' children, even if not directly referring to them by name." In addition, the FOAH orders Hunter "to cease and desist from engaging in any harassment or emails to the children's therapist and to cease and desist from engaging in any harassment or harassing emails to Petitioner's counsel or Minor's Counsel."

Hunter, who continued to be self-represented, filed notices of appeal on March 28, 2024, and April 5, 2024. In his initial notice of appeal and subsequent civil case information statement (CCIS), he indicated he was appealing (1) the court's FOAH on February 8, 2024, imposing sanctions of $5,000 under section 271, (2) the court's order on March 19, 2024, allowing each party a distribution of $25,000 from their investment accounts, and directing Hunter to pay minors' counsel outstanding fees of $4,010, and (3) the court's order the same day denying his ex parte application to disqualify and recuse minors' counsel. Hunter's subsequent notice of appeal and CCIS indicated he is challenging the court's April 3, 2024, order imposing a DVRO against him and the order denying his request for a DVRO against Shelby.

After receiving Hunter's CCIS, this court issued a letter asking Hunter why the notice of appeal from the court's March 19, 2024 order denying his request to disqualify and recuse minors' counsel should not be dismissed as taken from a nonappealable, interlocutory order. After receiving Hunter's

9

response, we dismissed the appeal in so far as it relates to the order denying Hunter's request to disqualify and recuse minors' counsel.[6]

DISCUSSION

I

*General Legal & Appellate Standards*

Although self-represented, we may not excuse Hunter from following the rules of appellate procedure. (See *Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 31 [" 'as is the case with attorneys, [self-represented] litigants must follow correct rules of procedure' "].) A self-represented party " 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247 (*Nwosu*).)

Critically, for most appellate issues, a trial court's judgment or order is presumed correct and it is the appellant's burden to affirmatively show error on appeal. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' "]; accord *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) To make this showing, the appellant must present meaningful legal analysis supported by citations to facts in the record and, if possible, authority to support the claim of error. (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457 (*Multani*); see Cal. Rules of Court, rule 8.204(a)(1)(C) [briefs must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"]; *id*., (a)(1)(B) [briefs must state each "point under a separate heading or subheading … and support each point by

---

6 Our initial letter also indicated that we would construe Hunter's notice of appeal from the April 3, 2024 hearing as taken from the subsequent FOAH entered on April 10, 2024.

10

argument and, if possible, by citation of authority"].)[7] In addition, the appellant's factual summary must be limited to "significant facts … in the record" (rule 8.204(a)(2)(C); *CIT Group/Equipment Financing, Inc. v. Super DVD, Inc.* (2004) 115 Cal.App.4th 537, 539, fn. 1 ["it is well established that a reviewing court may not give any consideration to alleged facts that are outside of the record on appeal"]) and must include " ' "*all* the material evidence on the point and *not merely [his or her] own evidence.*" ' " (*Nwosu, supra*, 122 Cal.App.4th at p. 1246).

In addition, the appellant must present an "adequate record" for review. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574–575; see *LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1061 (*LA Investments*) ["Every brief must support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears. (Rule 8.204(a)(1)(C).) The appellate court is not required to search the record on its own seeking error. If a party fails to support an argument with the necessary citations to the record, the argument will be deemed waived."].) Rule 8.122, subdivision (b) sets out the required contents of an appellant's appendix or clerk's transcript. Among other requirements, it "must" include "[a]ny … document filed … in the case in superior court" pertaining to the issues on

---

7    All subsequent rule references are to the California Rules of Court.

11

appeal (rule 8.122(b)(3)(A)); and "[a]ny exhibit admitted in evidence, refused, or lodged" (*id.*, (b)(3)(B)).[8]

## II

### *Sanctions*

Hunter first challenges the court's February 8, 2024 FOAH imposing a $5,000 sanction under section 271.  In his briefing, Hunter asserts the order should be reversed because he was not properly served with notice of the hearing on Shelby's application for sanctions.  In response, Shelby asserts that the ruling is not an appealable order.  We agree with Shelby and dismiss this aspect of Hunter's appeal.

Hunter was sanctioned $5,000 under section 271.  "A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.)  Because an appealable order is essential to appellate jurisdiction, we must dismiss an appeal from a nonappealable

---

[8] Shelby asks this court to dismiss Hunter's appeal based on the "disentitlement doctrine," which allows a reviewing court "to dismiss an appeal when the appealing party has refused to comply with the orders of the trial court." (*Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265.)  " ' "Appellate disentitlement 'is not a jurisdictional doctrine, but a discretionary tool that may be applied when the balance of the equitable concerns make it a proper sanction.' " ' " (*Ibid*.)  We decline to exercise our discretionary authority to dismiss Hunter's appeal on this basis.

order.[9] (*Daugherty v. City and County of San Francisco* (2018) 24 Cal.App.5th 928, 942.)

The sanction order is not appealable under Code of Civil Procedure section 904.1 because the statute allows an appeal only from an order directing payment of monetary sanctions by a party "if the amount *exceeds* five thousand dollars ($5,000)." (Code Civ. Proc., § 904.1, subd. (a)(12), italics added.) Sanction orders of $5,000 or less may be reviewed only "after entry of final judgment in the main action or, at the discretion of the court of appeal, may be reviewed upon petition for extraordinary writ." (*Id.*, § 904.1, subd. (b).) Because there has not been a final judgment in this dissolution proceeding, our court lacks appellate jurisdiction to consider Hunter's challenge to the $5,000 sanction order, and this aspect of Hunter's appeal must be dismissed. (See *Farwell v. Sunset Mesa Property Owners Assn., Inc.* (2008) 163 Cal.App.4th 1545, 1550 ["the question whether an order is appealable goes to the jurisdiction of an appellate court, which is not a matter of shades of grey but rather of black or white"].)

III

*Fund Distribution Order*

Hunter next challenges the family court's order denying, in part, his application to access the investment accounts the court previously froze. Hunter's arguments are difficult to understand. He complains first that the court froze the accounts without his knowledge or presence, which Hunter asserts was a violation of his constitutional rights of due process, equal

---

[9] Generally, " ' "an appeal may be taken only from the final judgment in an entire action." ' [Citations.] ' 'The theory [behind the rule] is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case." ' " (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756.)

protection, and "the assurance of funds for equal legal representation under ... [section] 2030." He also asserts the court violated the Canons of the California Code of Judicial Ethics.

Hunter also states that at each hearing he attended he asked the court to provide him with access to the frozen investment accounts to hire an attorney, and that the court denied the requests in violation of section 2030. He contends that because only Shelby has access to their accounts, he has been denied "legal equality." Finally, he asserts because of this inequality, "all four rulings addressed in [his] Brief ought to be set aside and/or reversed to promote the public's confidence in the judiciary" and protect Hunter's constitutional rights.[10] Hunter asks this court to reverse the court's August 2023 order freezing his accounts, or at minimum allow enough funds to be released to pay his taxes, credit card debt, and money owed to his family.

In response to these arguments, Shelby asserts that Hunter's ex parte request was partially successful because the court ordered a distribution to him. She also argues that the court's decision was not an abuse of discretion because Hunter provided no evidentiary support for his claims that he was destitute. With respect to Hunter's request for funds to hire an attorney, Shelby asserts the request was procedurally defective because his ex parte application did not include documents required by rule 5.427(b), including an income and expense declaration. Thus, the court did not have any evidence concerning Hunter's income, assets, or expenses to support his assertion that he needed funds from the community estate to pay counsel.

We agree with Shelby that Hunter has failed to show the trial court erred by ordering a $25,000 disbursement to both parties from the frozen

---

10    Hunter also repeatedly argues the court's ruling denying him access to the investment accounts has left him impoverished.

14

investment account, rather than a greater distribution to Hunter. As an initial matter, Hunter's brief does not supply this court with citations to the record, or any legal authority to support his argument. On this basis, the appellate claim is waived. (See *Multani, supra,* 215 Cal.App.4th at p. 1457 [" '[I]t is appellant's burden to affirmatively show error. [Citation.] To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error.' "]; rule 8.204(a)(1)(C) [briefs must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"]; *id.,* (a)(1)(B) [briefs must state each "point under a separate heading or subheading … and support each point by argument and, if possible, by citation of authority"].)

Even if Hunter's claim were not waived, we would conclude the claim lacks merit. Under section 2045, subdivision (a), "[d]uring the pendency of the [divorce] proceeding, on application of a party ... the court may issue ex parte ... [a]n order restraining any person from transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, except in the usual course of business or for the necessities of life, and if the order is directed against a party, requiring that party to notify the other party of any proposed extraordinary expenditures and to account to the court for all extraordinary expenditures."

"Generally, temporary spousal support may be ordered in 'any amount' based on the party's need and the other party's ability to pay. [Citations.] 'Whereas permanent spousal support "provide[s] financial assistance, if appropriate, as determined by the financial circumstances of the parties after their dissolution and the division of their community property," temporary

15

spousal support "is utilized to maintain the living conditions and standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations." [Citations.]' [Citation.] The court is not restricted by any set of statutory guidelines in fixing a temporary spousal support amount." (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327 (*Wittgrove*).)

We review temporary support orders, like Hunter's request for a distribution or access to the frozen investment accounts, for abuse of discretion. (*Wittgrove, supra*, 120 Cal.App.4th at p. 1327.) "We examine the challenged order for legal and factual support. 'As long as the court exercised its discretion along legal lines, its decision will be affirmed on appeal if there is substantial evidence to support it.' [Citations.] 'To the extent that a trial court's exercise of discretion is based on the facts of the case, it will be upheld "as long as its determination is within the range of the evidence presented." ' " (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1443.)

Hunter has not shown the court's order distributing $25,000 to each party and directing him to pay outstanding attorney fees to minors' counsel was an abuse of discretion. As Shelby points out in her brief, Hunter did not provide any evidentiary support for his request for additional funds in the family court. Indeed, the record before this court shows that Hunter has not complied with any of the disclosure obligations that he is subject to in the dissolution proceeding. Without this basic financial information, the trial court acted within its broad discretion by ordering a limited distribution.

Further, to the extent Hunter was requesting funds for attorney fees under section 2030, his request failed to include mandatory financial disclosure information. "Section 2030 provides for the making of an order in a dissolution proceeding that one party pay for the other party's attorney fees

16

and costs pendente lite. (§ 2030, subd. (a)(1).) The statute reflects the public policy of providing, ' " 'at the outset of litigation, consistent with the financial circumstances of the parties, a parity between spouses in their ability to obtain effective legal representation.' " [Citation.]' (*In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866.) The purpose 'is *not* the redistribution of money from the greater income party to the lesser income party,' but rather '*parity*: a fair hearing with two sides equally represented.' " (*In re Marriage of Sharples* (2014) 223 Cal.App.4th 160, 164 (*Sharples*).)

"In ruling on a request for fees and costs under section 2030, the court is guided by section 2032, which provides that an award of fees and costs under section 2030 may be made 'where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties.' (§ 2032, subd. (a); see *In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1055.) In determining what is just and reasonable, 'the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately ....' (§ 2032, subd. (b).) In addition to the parties' financial resources, the court may consider the parties' trial tactics." (*Sharples, supra*, 223 Cal.App.4th at pp. 164–165.)

"In 2010, the Legislature added subdivision (e) to section 2030, which direct[ed] the Judicial Council to adopt ... 'a statewide rule of court to implement this section and develop a form for the information that shall be submitted to the court to obtain an award of attorney's fees under this section.' (§ 2030, subd. (e), added by Stats. 2010, ch. 352, § 4.) In accordance with this direction, the Judicial Council adopted former rule 5.93[, since renumbered to rule 5.427(b)], which expressly 'applies to attorney's fees and costs based on financial need, as described in Family Code section[] 2030 ... .'

17

(Cal. Rules of Court, former rule 5.93(a)[.]" (*Sharples, supra*, 223 Cal.App.4th at p. 165.) Under the plain language of rule 5.427(b), "a party seeking attorney fees and costs under section 2030 must file and serve *either* form FL-319 *or* a comparable declaration." (*Id*. at p. 166.)

In this case, Hunter did neither. As a result, the family court had no information concerning Hunter's income, savings, cash, unemployment benefits (if any), or any expenses or debt he faced. Without this information, the family court's order did not constitute an abuse of discretion under section 2030. (See *In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 630 [" '[A] motion for attorney fees and costs in a dissolution proceeding is left to the sound discretion of the trial court. [Citations.] In the absence of a clear showing of abuse, its determination will not be disturbed on appeal.' [Citation.] Thus, we affirm the court's order unless ' "no judge could reasonably make the order made." ' "].)

## IV

### *Domestic Violence Restraining Orders*

With respect to both the restraining order issued against Hunter and the denial of his requested restraining order, Hunter argues the court committed several errors that prejudiced his case. First, Hunter asserts that the court erred by admitting into evidence the e-mails Shelby received from Hunter. As with many of his other arguments, Hunter has not provided this court with citations to the record to support this assertion, waiving the argument. (See *LA Investments, supra*, 75 Cal.App.5th at p. 1061 ["The appellate court is not required to search the record on its own seeking error. If a party fails to support an argument with the necessary citations to the record, the argument will be deemed waived."].)

Hunter also asserts that his due process rights were violated by the court's consideration of inadmissible evidence and that no evidence supported the restraining order issued against him. Hunter fails to direct this court to documents or hearing transcripts that identify the allegedly inadmissible evidence he contends the court improperly considered. Without such information, this court is unable to find any reversible error. (See *LA Investments, supra*, 75 Cal.App.5th at p. 1061.) Hunter also repeatedly asserts that Shelby's documentation of his behavior does not support the restraining order because his e-mails and contact with people in their lives was to set the record straight, and show that he was wrongly accused and framed by Shelby. He also repeatedly states that she has slandered him. He asserts he included "over 50 proof exhibits" in the family court to verify his own claims, but he has not provided any citation for these exhibits in his briefing in this court. Again, without this information, this court cannot find error. (*Ibid.*)

Hunter also contends the family court violated his First Amendment free speech rights by imposing the five-year restraining order that precludes Hunter from e-mailing or texting Shelby's employer, church, or friend group, or posting on social media, about Shelby and the minor children. Hunter also argues that the family court violated his due process rights by cutting short his argument during the hearing on the competing restraining orders. In support of his assertions he cites two cases, *In re Marriage of D.S. & A.S.* (2023) 87 Cal.App.5th 926, 936 (*D.S. & A.S.*) and *Ross v. Figueroa* (2006) 139 Cal.App.4th 856 (*Ross*). Hunter argues that *D.S. & A.S.* required the family court to "play a far more active and patient role (requiring more time) in developing the facts, before then making the decision whether or not to issue the restraining order." Hunter further argues that the family court based its decision on evidence the court or Shelby fabricated.

In response to Hunter's arguments, Shelby asserts there was more than sufficient evidence of Hunter's harassing behavior to support the court's issuance of a DVRO against him, and that his First Amendment rights do not protect his harassing conduct. Shelby also asserts the family court did not abuse its discretion by denying Hunter's DVRO request against her.

A

*Legal Standards*

Under section 6320, subdivision (a), of the DVPA, "[t]he court may issue an ex parte order enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, ... harassing, telephoning, ... destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party." The statute defines "disturbing the peace of the other party" as "conduct that, based on the totality of the

20

circumstances, destroys the mental or emotional calm of the other party. This conduct may be committed directly or indirectly, including through the use of a third party, and by any method or through any means including, but not limited to, telephone, online accounts, text messages, internet-connected devices, or other electronic technologies." (§ 6320, subd. (c).)

After the issuance of an ex parte order, "the court may issue a [permanent] DVRO 'if an affidavit or testimony and any additional information provided ... shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse.' (§ 6300, subd. (a).) The purpose of the DVPA is to prevent the recurrence of domestic violence by ensuring a period of separation if such acts are proved. (§ 6220; *Nevarez v. Tonna* (2014) 227 Cal.App.4th 774.)" (*D.S. & A.S., supra*, 87 Cal.App.5th at pp. 933–934.) Further, "[t]he statute should 'be broadly construed in order to accomplish [its] purpose' of preventing acts of domestic violence." (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 115 (*F.M. & M.M.*).)

"In many domestic violence cases ... the sole evidence of abuse will be the survivor's own testimony which, standing alone, can be sufficient to establish a fact: 'The testimony of one witness, even that of a party, may constitute substantial evidence.' " (*F.M. & M.M., supra*, 65 Cal.App.5th at p. 119.) In fact, the DVPA "expressly provides that a court may issue a restraining order 'based *solely* on the affidavit or testimony of the person requesting the restraining order.' (§ 6300, subd. (a), italics added.)" (*Id.* at pp. 118–119; see also *D.S. & A.S., supra*, 87 Cal.App.5th at p. 936 ["there are instances in which a DVRO request is either unchallenged or the declaration in support of the request, if not materially disputed, so clearly describes abuse under the legal standard that a family court may issue a DVRO after a

21

brief hearing that consists of minimal questioning of the petitioner and respondent confirming that the declarations are true"].)

"On appeal we review the trial court's grant or denial of a [DVPA] restraining order request for abuse of discretion. [Citation.] ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." ' " (*D.S. & A.S., supra*, 87 Cal.App.5th at p. 933.) It is "within the trial court's discretion to determine the facts and judge the credibility of the witnesses." (*In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 507.)

In addition, in considering the evidence supporting a DVRO, " 'the reviewing court must apply the "substantial evidence standard of review," meaning ' "whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted,' supporting the trial court's finding. [Citation.] 'We must accept as true all evidence ... tending to establish the correctness of the trial court's findings ..., resolving every conflict in favor of the judgment.' " ' " (*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1424 (*Evilsizor*).)

B

*Analysis*

We agree with Shelby that the court's decision to impose a five-year restraining order precluding Hunter from sending harassing e-mails and texts, and from posting about Shelby and the minor children on social media, was not an abuse of discretion. We also reject Hunter's claims that his due process and free speech rights were violated by the family court's order. The evidence submitted by Shelby that the family court found admissible and considered for purposes of its ruling showed Hunter had sent voicemails and e-mails, and made social media posts on the internet, that were abusive and

22

harassing towards Shelby and greatly harmed her emotional well-being. Specifically, Hunter repeatedly accused Shelby of being a felon and abusive towards their children, and sent these accusations to her employer and the parties' shared community of friends and church members, as well as other professional connections. Shelby also presented evidence that Hunter's conduct threatened her employment, and thus the parties' only source of support for the minor children.

At the hearing on the parties' cross-requests for restraining orders, Hunter repeated the accusations he made in the various communications to their shared community and Shelby's employer, and he openly admitted to this conduct. Hunter, however, provided no evidentiary support for his claims of wrongdoing by Shelby.[11] Further, even if Hunter's version of events were true, this would not prevent the trial court from finding his conduct was abusive. (See *Altafulla v. Ervin* (2015) 238 Cal.App.4th 571, 578 ["The factual accuracy of information used to otherwise harass the victims of domestic violence does not take abusive conduct outside the scope of the DVPA."].)

After providing Hunter with several opportunities to address Shelby's evidence showing Hunter's harassing conduct, Hunter stated he was correcting Shelby's false narrative that he was suffering a mental health crisis. After Hunter's arguments, the court reasonably concluded he was not a credible witness and that a restraining order protecting Shelby was appropriate. (See § 6203, subd. (b) ["Abuse is not limited to the actual infliction of physical injury or assault."]; *N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 597 ["For purposes of the [DVPA], abuse includes behaviors that were

---

[11]    Hunter makes the same accusations about Shelby repeatedly in his briefing in this court.

enjoined by a TRO, and is not limited to acts inflicting physical injury."]; and *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1142–1143, 1146–1147 [substantial evidence supporting DVPA restraining order where there was no evidence of physical abuse, but restrained party disturbed peace of ex-girlfriend by e-mailing her, sending her text messages, and showing up unannounced at her home].) This determination was supported by the evidence before the court.

Hunter's assertion that his free speech rights were violated by the imposition of a restraining order is also without merit. "The First Amendment to the United States Constitution provides: 'Congress shall make no law ... abridging the freedom of speech ....' 'This fundamental right to free speech applies to the states through the Fourteenth Amendment's due process clause.' [Citation.] ' "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." [Citation.] "The term prior restraint is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." [Citation.] ... [P]ermanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." ' " (*Evilsizor, supra*, 237 Cal.App.4th at p. 1427.)

Although the right to free speech is "stated in broad terms," it "is not absolute." (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 134.) " '[T]here are categories of communication and certain special utterances to which the ... protection of the First Amendment does not extend because they "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."

24

[Citation.] [¶] Libelous speech has been held to constitute one such category.' " (*Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, 1147.) Additionally, and critically here, abusive conduct under the DVPA is not afforded First Amendment protection. (*Evilsizor, supra*, 237 Cal.App.4th at pp. 1427–1428.)

Hunter has the right to speak, but not in the manner prohibited by the trial court. Because the court properly found Hunter's conduct constituted "abuse" under the DVPA, the injunction does not amount to a prohibited restraint of protected speech. (§§ 6203, subd. (b), 6218, subd. (a), 6320, subd. (a).) In his briefing, Hunter asserts that he "has not said or written one false thing about [Shelby] and he proved that." He also contends that he submitted proof of the veracity of his own statements with 50 exhibits. Hunter, however, provides no indication of what the exhibits are or where they are located in the record. As discussed, the trial court's determination that Shelby was a credible witness, and Hunter was not, and that his conduct was abusive was amply supported by the evidence and well within the court's discretion. As a result, his conduct was "*not* the type of speech afforded protection under the First Amendment." (*Evilsizor, supra*, 237 Cal.App.4th at p. 1428.)

We also reject Hunter's assertion that the family court violated his due process rights during the DVRO hearing. Hunter appropriately looks to *D.S. & A.S., supra*, 87 Cal.App.5th 926 to support this claim. In that case, the Court of Appeal reversed a DVRO in a dissolution proceeding, holding that the trial court had failed to conduct a hearing in accordance with fundamental due process. (*Id*. at pp. 930, 933.) Unlike here, in *D.S. & A.S.*, at the DVRO hearing, the trial court made "no inquiry" with D.S. (against whom the DVRO was issued and who was self-represented) "regarding the

25

allegations in A.S.'s declaration [supporting the request for the DVRO] or his denial of those allegations." (*Id*. at p. 932.) Further, "[t]he court did not address or rule on the hearsay objections and other objections to the legal sufficiency of A.S.'s claims raised in D.S.'s declaration." (*Ibid*.) In addition, "[n]either party was sworn as a witness and the court did not seek any testimony from either party regarding the abuse allegations. Neither party sought to introduce additional testimony, witnesses, or other evidence regarding the DVRO, and the court did not ask if either party wished to call any witness or admit any additional evidence." (*Ibid*.)

In holding that these proceedings failed to satisfy the requirements of due process, the court noted, "[l]itigants in DVRO proceedings 'are unrepresented by counsel in the vast majority of cases,' as they were here. ([*Ross, supra*, 139 Cal.App.4th at p.] 861 & fn. 3 ['In domestic violence restraining order cases, litigants are reported to be pro se over 90 percent of the time.'].) This high percentage of self-represented litigants places a special burden on bench officers hearing these restraining order requests. Our family courts are daily faced with the needs of self-represented litigants, the requirements of judicial neutrality, and the need for judicial efficiency. These interests require delicate balancing, but allowance must be made for the status of the parties appearing before the court. In a contested restraining order hearing, the trial court is tasked with protecting the fundamental due process rights of self-represented litigants both seeking a restraining order or defending against the request, even when they do not fully understand what those rights encompass." (*D.S. & A.S., supra*, 87 Cal.App.5th at p. 934.)

The court also stated that "[d]ue process requires 'the right to be heard in a meaningful manner.'" (*D.S. & A.S., supra*, 87 Cal.App.5th at p. 935.)

26

The court explained that when litigants are self-represented in a DVRO proceeding, it " 'influences how these hearings should be conducted—with the judge necessarily expected to play a far more active role in developing the facts, before then making the decision whether or not to issue the requested permanent protective order. In such a hearing, the judge cannot rely on the [self-represented] litigants to know each of the procedural steps, to raise objections, to ask all the relevant questions of witnesses, and to otherwise protect their due process rights.' [Citation.] 'The role of a judicial officer sitting in such a court, which has many attributes of an inquisitorial as opposed to an adversarial process, is different than when sitting in a purely adversarial court where the parties are presumed to be "well counseled" by skilled and knowledgeable lawyers. [¶] In a purely adversarial setting it is reasonable for the judge to sit back and expect a party's lawyer to know about and either assert or by silence forfeit even the most fundamental of the party's constitutional and statutory procedural rights. But not so in a judicial forum, such as this domestic violence court, which can expect most of those appearing before the court to be unrepresented.' " (*Id.* at p. 935.)

In this case, Shelby was represented by competent counsel and Hunter was self-represented, making this situation different from *D.S. & A.S.*, but no less precarious for Hunter. Indeed, the record before this court makes clear that Hunter was outmatched by Shelby's lawyer in the trial court proceedings. However, we do not agree with Hunter that his due process rights were violated in the same way D.S.'s rights were infringed. Rather, the family court allowed Hunter to present his case and explain whether Shelby's accusations were factual. When given this opportunity—unlike D.S., who denied A.S.'s allegations of abuse—Hunter readily admitted to the abusive conduct at issue. For this reason, Hunter did not face the same due

27

process problems raised in *D.S. & A.S.*  This is an instance in which the DVRO request "so clearly describes abuse under the legal standard that [the] family court may issue a DVRO after a brief hearing that consists of minimal questioning of the petitioner and respondent confirming that the declarations are true." (*D.S. & A.S., supra*, 87 Cal.App.5th at p. 936.)  Further, unlike *D.S. & A.S.*, the family court here allowed both sides to present their version of events and ruled on Hunter's evidentiary objections, even excluding some of Shelby's evidence from its consideration.[12]

Finally, we reject Hunter's challenge to the court's denial of his request for a DVRO against Shelby.  He argues the court employed a double standard, allowing Shelby to exercise her free speech rights, but limiting his rights by imposing the DVRO only against him.  He repeatedly states that Shelby did not present any evidence to support her request, but that he provided the court with "50+" exhibits.  He also asserts that because Shelby's

---

[12]     Hunter also cites *Ross, supra*, 139 Cal.App.4th 856, in support of his argument that his due process rights were violated.  In *Ross*, like *D.S. & A.S.*, neither party (a former girlfriend and boyfriend) were represented in the girlfriend's request for a DVRO. (*Id*. at p. 859.)  The temporary referee who heard the request for a permanent DVRO denied the boyfriend's request for a continuance to obtain representation and to serve his response and written evidence without violating the TRO. (*Id*. at p. 860.)  The referee then issued the permanent DVRO without allowing either party to testify and denying the ex-boyfriend's explicit request to present evidence in support of his denial of the accusations against him. (*Ibid*.)  On appeal, the court held the referee erred by failing to grant a continuance, which was required under section 243 because the boyfriend had not been provided notice of the TRO. (*Id*. at pp. 864–865.)  In dicta, the court also explained that on remand the parties should be afforded the opportunity to present oral testimony. (*Id*. at p. 867.)  The principles of *Ross* are important, and like *D.S. & A.S.*, *Ross* highlights the unique role the trial court must play in family court proceedings. (*Id*. at pp. 865–867.)  However, *Ross* presented an egregious violation of the respondent's rights that is not like the facts here.

employer took his allegations seriously by limiting her duties, his allegations must be factual.

Hunter's arguments on this issue are difficult to understand. He repeats many of the assertions he makes in other parts of his briefing and accuses the trial court of misinterpreting the law and the evidence, and showing bias against him. As discussed in the body of the opinion, the trial court exercised its discretion lawfully and found Hunter was not credible. Further, Hunter has not shown the family court abused its discretion by concluding there was insufficient evidence to support a restraining order against Shelby. Of note, Hunter has not provided any citations to the record in support of his repeated accusations of wrongdoing by Shelby. Accordingly, we have no basis to overturn the trial court's order denying Hunter's request for a DVRO. (See *Multani, supra*, 215 Cal.App.4th at p. 1457.)

## DISPOSITION

The appeal from the family court's February 8, 2024 FOAH imposing a $5,000 sanction against Appellant under Family Code section 271 is dismissed. All other orders are affirmed. The costs of appeal are awarded to Respondent.

McCONNELL, P. J.

WE CONCUR:

DATO, J.

KELETY, J.

29